337 So.2d 783 (1976)
Michael Edward PROVENCE, Appellant,
v.
STATE of Florida, Appellee.
No. 46671.
Supreme Court of Florida.
July 21, 1976.
Rehearing Denied October 11, 1976.
*784 James A. Gardner, Public Defender, and Charles H. Livingston, Sp. Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Gerald L. Knight, Asst. Atty. Gen., for appellee.
SUNDBERG, Justice.
This is a direct appeal from a conviction of first degree murder and a sentence of death rendered in the Manatee County Circuit Court. We have jurisdiction pursuant to Article V, Section 3(b)(1), Florida Constitution.
On Thursday, October 11, 1975, at about 9:00 p.m., Peter Dent and three other men, including the appellant, left Washington, D.C. for Florida in order to buy marijuana. Dent was driving a Mercedes which he had contracted with an auto drive-away service to transport from Washington to Dallas. After stopping in Charlottesville, Virginia (which Provence and Dent had visited earlier in the week so that the latter could pick up some money), the car proceeded to St. Petersburg, arriving at about 3:00 p.m. on Friday, October 12, 1975. After visiting a bar called "Shadrack's", where they met a friend of the appellant named "Mel," the quartet checked into the Sun Tan Motel, where Dent, who had driven the entire trip and was "speeding" on amphetamines, remained. The other three men returned to the bar. Later they drove around the St. Petersburg area, stopping at a Western Auto store so that appellant, accompanied by one of the others, could purchase a knife. He purchased a hunting knife rather than a more limber fishing knife, saying that the latter "wouldn't do" or words to that effect.
Provence and the two other men (whose names were Nistendirk and Rose) returned to the motel between 7:00 and 7:30 p.m. Provence and Dent left in the Mercedes for an approach to the Skyway Bridge in order to make the "buy" at 8:00 p.m. pursuant to a conversation appellant had allegedly had with the seller in the afternoon. (Whether or not Provence had suggested the Florida trip is in dispute, but it is clear that the journey was made in order to exploit his Florida "contacts" and that only he knew the identity of the drug seller.) Dent, who customarily carried a gun, did not take his pistol to the situs of the transaction.
Provence returned to the motel about 9:30 or 10:00 p.m. According to Nistendirk, the appellant was jubilant, "flashed a wad of money," said that he had received $1,000 for arranging the transaction and another $150 from Dent, who Provence said had proceeded to Dallas. The remaining trio flew back to Washington from Tampa International Airport the next day.
Dent's body was found on the approach to the Skyway Bridge by a passing motorist sometime after 7:00 p.m. on Friday, October 12, 1975. The body, located between the seawall and the road, had been stabbed eight times. Dent's trousers and belt buckle were undone. A wallet located beside the body contained $50.00 and some identification. The Mercedes was found, apparently abandoned, behind a closed bar some two or three blocks from the Sun Tan Motel. Blood was found on both the inside and outside of the car, and the headliner was cut. Fingerprints identified as Provence's were found on the steering wheel, and Dent's prints were found around the driver's door.
Provence was subsequently detained by police in a remote part of Idaho for driving with an improper license plate. He was arrested after an NCIC computer check revealed he was wanted for murder in Manatee County, Florida.
At trial the State argued that Provence was guilty of first degree murder by premeditation (evidenced by his purchase of *785 the hunting knife and by his luring the decedent, whom the State claimed he asked not to carry a gun, to the site of a fictitious "buy") or by felony murder (killing Dent while robbing him of some $1,500 cash). Appellant claimed that he had acted in self-defense. His story was that Dent, a trained Navy "Seal" who possessed a violent temper, had become impatient while waiting for the seller at the Skyway approach. The two then quarreled, with the decedent choking Provence, and the latter stabbing Dent to death in self-defense. Only after Dent's death did the thought of taking his money enter the defendant's mind, he testified. Appellant refused to name the party from whom the marijuana was to be purchased. The jury found Provence guilty of first degree murder and recommended that he be sentenced to life imprisonment. The judge sentenced appellant to death, however, apparently finding the existence of two aggravating circumstances under Section 921.141(5)(d) and (f), Florida Statutes, and no mitigating circumstances under subsection (6).
On appeal, Provence raises several points which he contends merit reversal of his conviction. We find that only one of these issues requires discussion.
During voir dire various members of the venire expressed reservations about the defendant's right not to testify. At one point the following exchange took place:
"MRS. BALL: (Juror No. 1) May I ask a question?
"THE COURT: Yes, mam [sic].
"MRS. BALL: Why, if a person were charged with something and were not guilty, why would they not testify in their own defense?
"THE COURT: You've got me. (e.s.)
"MRS. BALL: It would seem to me they were guilty if they wouldn't defend themselves.
"THE COURT: Let me explain, Mrs. Ball. The burden of proof is on the State of Florida to prove beyond a reasonable doubt that this defendant is guilty of this particular crime. For instance, if the State didn't put on any evidence to show the guilt of this defendant you could not bring in a guilty verdict. Do you understand?
"MRS. BALL: Yes.
"THE COURT: If you went out and deliberated now you would find him not guilty because you have no evidence.
"MRS. BALL: Right.
"THE COURT: If the State doesn't meet a burden of proof then, of course, your verdict would be not guilty. It is his choice whether or not he wants to testify or not. You will understand as the case goes along."
Appellant's trial counsel moved for a mistrial; his motion was denied.
Appellant's contention here is that the judge's offhand answer to juror Ball's question either constituted reversible error per se or combined with allegedly improper remarks of counsel for the State to create a situation where the defendant's right not to testify could not possibly have been exercised.
We agree that the judge's "You've got me" response to the juror's question was unfortunate and ill-considered. "The dominant position occupied by a judge in the trial of the cause before a jury is such that his remarks or comments, especially as they relate to the proceedings before him, overshadow those of the litigants, witnesses and other court officers." Hamilton v. State, 109 So.2d 422, 424 (3d D.C.A. Fla. 1959). However, we find that in this case the judge's remark does not require reversal. First, considered as a whole, his entire response, including the clarifying explanation that no inference of guilt could be drawn from appellant's failure to testify, was neither misleading nor erroneous. See United States v. Esse, 468 F.2d 1070 (5th Cir.1972), in which the court held that an inadvertent remark by the trial court to defense counsel to the effect that counsel was free to put the defendant on the witness stand to rebut testimony then in evidence was harmless error when the remark was clarified shortly thereafter by an adequate interim instruction to the jury as to *786 the defendant's right not to testify, where the defendant did in fact take the stand and where the proof of guilt was overwhelming. Second, it is difficult to credit appellant's argument that the court's comment "forced" his trial counsel to put him on the witness stand. We agree that a defendant's decision whether to testify must be made in an atmosphere free of coercion or intimidation. But here there can be little doubt that from the outset the defense intended to put Provence on the stand. Faced with a situation in which the deceased's body exhibited eight stab wounds and in which there were no witnesses to the homicide, how else but through his own testimony from the witness stand could the defendant hope to present a credible self-defense argument?
We hold that the trial court's comment was error, but that in the total circumstances of this case, that error does not require reversal of the instant conviction. Appellant was entitled not to a perfect trial but to a fair one, and he received it in the court below.
However, we agree with appellant that the trial court erred in sentencing him to death. The judge's order does not specifically enumerate which aggravating circumstances under Section 921.141(5), Florida Statutes, induced him to override the jury's recommendation of mercy and to sentence Provence to die. The State argues the existence of two aggravating circumstances, that the murder occurred in the commission of the robbery [subsection (d)] and that the crime was committed for pecuniary gain [subsection (f)]. While we would agree that in some cases, such as where a larceny is committed in the course of a rape-murder, subsections (d) and (f) refer to separate analytical concepts and can validly be considered to constitute two circumstances, here, as in all robbery-murders, both subsections refer to the same aspect of the defendant's crime. Consequently, one who commits a capital crime in the course of a robbery will always begin with two aggravating circumstances against him while those who commit such a crime in the course of any other enumerated felony will not be similarly disadvantaged. Mindful that our decision in death penalty cases must result from more than a simple summing of aggravating and mitigating circumstances, State v. Dixon, 283 So.2d 1, 10 (Fla. 1973), we believe that Provence's pecuniary motive at the time of the murder constitutes only one factor which we must consider in this case.
At the time of sentencing in the instant case, there were two armed robbery charges pending against appellant in the Washington, D.C. area. The court also concluded on the basis of information contained in the p.s.i. that "[a]t the time of his arrest the Defendant was in the process of ripping off a heroin addict named David W. Jackson in a remote mountain area of Kootenai County, Idaho." We recognize that the constitutional parameters of the trial judge's discretion in the area of sentencing are wide indeed. See Specht v. Patterson, 386 U.S. 605, 608, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). But Section 921.141, Florida Statutes, intended as it was to meet the constitutional infirmity of capital sentencing procedures explored in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), is designed to limit the unbridled exercise of judicial discretion in cases where the ultimate penalty is possible. Section 921.141(5), Florida Statutes, states that "[a]ggravating circumstances shall be limited to the following" and then proceeds to list eight circumstances, (a)-(h). Subsection (b) reads:
"The defendant was previously convicted of another capital felony involving the use or threat of violence to the person." (Emphasis supplied)
Clearly the language of that subsection excludes the possibility of considering mere arrests or accusations as factors in aggravation. To the extent the trial court did so, it erred.
A review of other cases in which the issue of a sentence of death after life recommendation by the jury has been faced convinces *787 us that the circumstances of the instant case do not call for the imposition of the death penalty. For example, there is a significant difference between this situation and the aggravating circumstances found by the Court in Douglas v. State, 328 So.2d 18 (Fla. 1976) (defendant forced performance of sexual acts between victim and third party, then between third party and himself), and Dobbert v. State, 328 So.2d 433 (Fla. 1976) (child torture and infanticide). In fact, the circumstances of this case are less aggravated than those present in other cases where this Court has reversed the trial court's imposition of the death penalty. See Halliwell v. State, 323 So.2d 557 (Fla. 1975) (breaker bar used as murder weapon; victim's body dismembered); Swan v. State, 322 So.2d 485 (Fla. 1975) (victim, badly bruised and beaten, found with "[h]er hands, neck and left foot tied so that any efforts she might have made to free herself could have choked her to death.").
Tedder v. State, 322 So.2d 908, 910 (Fla. 1975), articulated the standard to be applied when this Court is asked to review a death sentence imposed subsequent to a jury recommendation of life imprisonment:
"... A jury recommendation under our trifurcated death penalty statute should be given great weight. In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." (Emphasis supplied)
We have no difficulty in concluding that reasonable persons can differ over the fate of Michael Edward Provence. With the jury having struck the balance in his favor, under the Tedder standard we will not set aside their recommendation on these facts.
Appellant's conviction for first degree murder is affirmed. The order of the trial judge sentencing appellant to death is quashed, with directions to enter a sentence of life imprisonment without possibility of parole for 25 years.
ADKINS, BOYD, ENGLAND and HATCHETT, JJ., concur.
OVERTON, C.J., concurs in part and dissents in part with an opinion.
ROBERTS, J., concurs in part and dissents in part with an opinion.
OVERTON, Chief Justice (concurring in part, dissenting in part).
I concur with the majority opinion insofar as it affirms the appellant's conviction.
The circumstances of this case appear to justify the imposition of the death penalty, and I therefore dissent from the quashing of the death sentence and imposing life imprisonment. The aggravating findings of the trial judge concerning other conduct should not be totally discarded provided the defendant has a full opportunity to refute those matters. I would remand the cause to the trial judge for hearing concerning this conduct and for further amplification of his reasons for imposing the death sentence.
ROBERTS, Justice (concurring in part, dissenting in part).
I would affirm the conviction and sentences. This was a horrible inexcusable crime.
Rehearing denied;
OVERTON, C.J., ADKINS, BOYD, ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
ROBERTS, J., dissents.