374 So.2d 954 (1979)
Myron David FLEMING, Appellant,
v.
STATE of Florida, Appellee.
No. 50005.
Supreme Court of Florida.
June 14, 1979.
Rehearing Denied October 5, 1979.
*955 Jack O. Johnson, Public Defender, and James R. Wulchak, Thomas A. Pobjecky, Paul J. Martin and Steven H. Denman, Asst. Public Defenders, Bartow, for appellant.
Jim Smith, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This is a direct appeal from a conviction of murder in the first degree and a sentence of death imposed by the Circuit Court of Lee County. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution. We affirm in part and reverse in part.
On March 13, 1976, appellant, armed with a .45 caliber semiautomatic pistol, entered the Purolator Security Building in Ft. Myers, Florida, with intent to commit a robbery. Yorkcavage, appellant's companion, entered the building ahead of appellant by forcing Mr. Johnson, a Purolator employee, to unlock the door, turn off the alarms, and open the company safe. Johnson's eyeglasses, keys, and billfold were taken. Mr. Williams, another Purolator employee, observed activity in the building and notified the police. When a patrol car arrived, appellant suggested that they "make a run for it," taking Johnson as a hostage. As they started out the door, Williams called to the men to surrender, but they ignored his request and proceeded towards the getaway car. A gun battle ensued in which Yorkcavage and Johnson were hit. Yorkcavage later died from these injuries. Once inside the automobile, appellant fired his pistol through the windshield, wounding Officer Moore. At this point, Johnson grabbed the guns of both his captors. While the three men wrestled for control of the weapons, Lieutenant Spurlin of the Ft. Myers Police Department and Deputy Yahl of the Lee County Sheriff's Office, rushed the vehicle and succeeded in opening one of the doors. During the struggle, appellant's gun discharged, striking Lieutenant Spurlin and Deputy Yahl. Deputy Yahl was mortally wounded.
Appellant was charged in an eight count indictment: (I) first degree murder of Deputy Yahl, section 782.04(1)(a), Florida Statutes; (II) second degree murder of Yorkcavage, section 782.04(3), Florida Statutes; (III) first degree robbery of Johnson, section 812.13(2)(a), Florida Statutes; (IV) attempted robbery of Purolator Security, section 777.04(1), Florida Statutes; (V) kidnapping of Johnson, section 787.01, Florida Statutes; (VI) attempted first degree murder of Spurlin, section 777.04(1), Florida Statutes; (VII) attempted first degree murder of Moore, section 777.04(1), Florida Statutes; and (VIII) possession of a weapon in the commission of a criminal offense, section 790.07(2), Florida Statutes.
Appellant pleaded guilty to the murder of Yahl, attempted robbery of Purolator Security, and the attempted first degree murders of Spurlin and Moore. In accordance with the plea agreement, the state dismissed the remaining counts of the indictment.
Appellant argues that the trial court erred in accepting his guilty plea to Count VI, attempted first degree murder of Lieutenant Spurlin. It is his contention that there was no factual basis to support the plea since Lieutenant Spurlin was shot accidentally. We disagree.
An "attempt" consists of two essential elements: (1) a specific intent to commit the crime, and (2) a separate overt, ineffectual act done towards its commission. Hutchinson v. State, 315 So.2d 546 (Fla. 2d DCA 1975); Groneau v. State, 201 So.2d 599 (Fla. 4th DCA 1967); Robinson v. State, 263 So.2d 595 (Fla. 3d DCA 1972). Regarding the first element, the Fourth District Court stated in Groneau:

*956 The accused must have intended to accomplish the particular crime which is the basis of the charge against him. He cannot be convicted of an attempt to commit a crime which he did not intend to commit. The particular intent is essential to constitute the crime. [Groneau v. State, supra, at 602.]
Accordingly, the offense of attempted first degree murder requires a premeditated design to effect death. In cases where the alleged "attempt" occurs during the commission of a felony, however, the law presumes the existence of premeditation, just as it does under the felony murder rule. Adams v. State, 341 So.2d 765 (Fla. 1976); Knight v. State, 338 So.2d 201 (Fla. 1976).[1] Because the appellant was engaged in the commission of a felony when Lt. Spurlin was shot, the accidental nature of the shooting is irrelevant. We find no error.
Following the entry of appellant's plea, a jury was impaneled. The jury recommended to the trial court that a sentence of death be imposed. See section 921.141(1), Florida Statutes. Appellant argues that the trial court committed reversible error in the selection of the advisory jury by excusing for cause two jurors who expressed opposition to the death penalty. The record clearly shows that these jurors expressed more than mere opposition. Both exhibited an irrevocable commitment to vote against death regardless of the facts presented or the instructions given by the court. The judge's actions were therefore proper.[2]Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
*957 Appellant next argues that the state must demonstrate a compelling governmental interest in imposing a sentence of death. He also urges reconsideration of our decision in Alvord v. State, 322 So.2d 533 (Fla. 1975), asserting that a recommendation of death by a simple majority is unconstitutional. We reject both contentions on the basis of Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
A more serious question is raised by appellant's contention that the trial judge improperly considered subsections (d) and (f) of section 921.141(5), Florida Statutes (1975), as two separate aggravating circumstances for purposes of arriving at a sentence.[3] Citing Provence v. State, 337 So.2d 783 *958 (Fla. 1976), he argues that robbery by its very nature contains a motive of pecuniary gain as outlined in subsection (f) and should not be weighed as a separate aggravating circumstance from subsection (d):
The capital felony was committed while the defendant was engaged ... in the commission of . .. robbery... .
In Hargrave v. State, 366 So.2d 1, 5 (Fla. 1978), we addressed this identical issue and held:
... Although Provence v. State, 337 So.2d 783 (Fla. 1976), condemns the doubling up of the aggravating circumstances of pecuniary gain each time a crime such as robbery is concerned, the mere recitation of both circumstances does not in all cases call for a condemnation of the sentencing hearing and judgment. As State v. Dixon, supra, teaches us, the statute does not comprehend a mere tabulation of aggravating versus mitigating circumstances to arrive at a net sum. It requires a weighing of those circumstances. Absent the circumstance of pecuniary gain, there were ample other statutory aggravating circumstances to place on the scale to weigh against the valid mitigating circumstances.
In this case, the trial judge found the existence of five aggravating circumstances:
(1) The defendant knowingly created a great risk of death to many persons. (Section 921.141(5)(c).)
(2) The capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, rape, arson, burglary, kidnapping, or aircraft piracy or the unlawful throwing, placing, or discharging of a destructive device or bomb. (Section 921.141(5)(d).)
(3) The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody. (Section 921.141(5)(e).)
(4) The capital felony was committed for pecuniary gain. (Section 921.141(5)(f).)
(4) The capital felony was especially heinous, atrocious, or cruel. (Section 921.141(5)(h).)
Only one mitigating factor was established: no significant history of prior criminal activity. (Section 921.141(6)(a).) Absent the factor of pecuniary gain, there remain ample statutory aggravating factors to outweigh the one in mitigation.
Appellant next contends that the trial court erred in designating the crime as especially heinous, atrocious, and cruel, arguing that the killing of Deputy Yahl was no more shocking than the "majority of murder cases reviewed by this Court." Halliwell v. State, 323 So.2d 557, 561 (Fla. 1975). We agree. In State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), this court stated:

*959 It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is necessarily torturous to the victim. [Emphasis added.]
This case is not unlike Cooper v. State, 336 So.2d 1133 (Fla. 1976), wherein the victim was killed by two gunshots to the head. While affirming the death sentence, the court reversed the trial court's finding that the murder was especially heinous, atrocious, and cruel, reasoning that the victim "was killed instantaneously and painlessly, without additional facts which made the killing `heinous' within the statutorily-announced `aggravating' circumstance." (At 1141.)
The evidence in this case shows that the murder was committed by a single shot, fired when the hostage grabbed appellant's gun. As human beings, we are appalled by such senseless killings. As judges, however, we must unemotionally apply the law to the facts. We therefore hold that the trial court erred in finding the murder in this case "especially heinous, atrocious or cruel."
Since we are unable to determine what significance this factor was given in the weighing process, we must reverse and remand for resentencing by the trial judge without further recommendation from a jury.
Accordingly, while we affirm the judgment, the sentence is reversed and the cause remanded for resentencing.
It is so ordered.
ENGLAND, C.J., and BOYD, SUNDBERG and HATCHETT, JJ., concur.
OVERTON, J., concurs in part and dissents in part.
"I concur in the conviction but dissent from the remand for resentencing. I would affirm the sentence of death."
NOTES
[1] Any homicide committed during the perpetration or attempted perpetration of a felony constitutes first degree murder. State of mind is immaterial for the felony is said to supply the intent.
[2] MR. D'ALESSANDRO:

* * * * * *
Now, my question to you is this: Do any of you hold or have any conscientious convictions against the death penalty?
MR. COLLIER: Yes.
MR. D'ALESSANDRO: All right, sir. Let's start with Mr. Collier. Would you explain to me what your thoughts are on the death penalty?
MR. COLLIER: Thou shalt not kill.
MR. D'ALESSANDRO: You are opposed to it?
MR. COLLIER: Yeah, I'm opposed to it.
MR. D'ALESSANDRO: If, sir, you were selected to sit on the jury and the Court instructed you as to the law, are you saying to me that you could envisualize no facts or circumstances that exist where you could justify invoking the death penalty?
MR. COLLIER: No, I don't see it.
MR. D'ALESSANDRO: You can't imagine any facts or any situation of such a nature that you could take that course of action?
MR. COLLIER: If I could justify it as to a means to an end, I could. But I can't see it.
MR. D'ALESSANDRO: All right. I'm coming back to you in a minute, sir.
Mr. Booth, what about yourself, sir?
MR. BOOTH: I can't envision anything that could make me recommend death.
MR. D'ALESSANDRO: Could you envision a situation where you would hear facts which were of  and we're not talking about  we're talking  remember, you don't have to decide guilt or innocence  can you envision any set of facts in your mind that would be of such a nature that had a person committed those acts that you would impose a death penalty?
MR. BOOTH: No, sir.
MR. D'ALESSANDRO: In other words, the most heinous offense you can envision in your mind, even if you were satisfied and knew that person had, in fact, done those actions, you could not recommend the imposition of the death penalty?
MR. BOOTH: No, sir.
MR. D'ALESSANDRO: What about yourself?
MR. COLLIER: I don't feel like I could do it on a human being.
MR. D'ALESSANDRO: Are there any others of you that hold those thoughts?
(No response.)
MR. D'ALESSANDRO: If it please the Court, the State would challenge for cause Mr. Booth and Mr. Collier, subject to Defense counsel's questions.
THE COURT: Do you desire to inquire?
MR. JACOBS: I understand these are for cause, is that correct?
THE COURT: That's correct.
Gentlemen, if you're instructed by the Court to consider aggravating circumstances and certain mitigating circumstances, and after hearing the testimony and having to recommend a life imprisonment or sentence of death, do you feel if the circumstances and the evidence presented to you made you, in your mind, feel that the death penalty should be recommended, could you recommend that death penalty?
MR. BOOTH: No.
MR. COLLIER: In good conscience, I wouldn't do it.
THE COURT: All right. The Court will excuse both you gentlemen for cause. Please step down and have a seat with your fellow jurors.
[3] The trial judge's findings of fact are as follows:

As to Count I of the information, the Court, upon my review of the proceedings held with regard to entry of a plea of guilty in this case, the separate proceedings held on the issue of the penalty to be imposed, by notes, the record, and the sentencing proceedings, I find as follows, with respect to aggravating circumstances and mitigating circumstances:
Aggravating circumstances:
(a) The capital felony was not committed by a person under sentence of imprisonment.
(b) The Defendant was not previously convicted of another capital felony or of a felony involving the use or threat of violence to the person.
(c) The Defendant knowingly created a great risk of death to many persons.
(d) The capital felony was committed while the Defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, rape, arson, burglary, kidnapping, or aircraft piracy or the unlawful throwing, placing or discharging of a destructive device or bomb.
(e) The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.
(f) The capital felony was committed for pecuniary gain.
(g) The capital felony was not committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.
(h) The capital felony was especially heinous, atrocious, or cruel.
Mitigating circumstances:
(a) The Defendant has no significant history of prior criminal activity.
(b) The capital felony was not committed while the Defendant was under the influence of extreme mental or emotional disturbance.
(c) The victim was not a participant in the Defendant's conduct or consented to the act.
(d) The Defendant was not an accomplice in the capital felony committed by another person and his participation was not relatively minor.
(e) The Defendant did not act under extreme duress or under the substantial domination of another person.
(f) The capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired.
(g) The age of the Defendant at the time of the commission of the crime is not a factor, he having reached his majority many years prior to the commission of the crime.
With respect to my finding that the Defendant knowingly created a great risk of death to many persons, the testimony and evidence established that the Defendant and his companion planned and attempted to commit armed robbery, a most serious offense, and during the transaction armed themselves with weapons and ammunition enough to knowingly create a great risk of death to many persons.
Additionally, when told, or asked, to give up and/or surrender, the Defendant on more than one occasion refused and indicated a desire and intention to continue his course of action which created a great risk of death to many persons.
This evidence, together with all of the evidence, establishes that the Defendant knowingly created a great risk of death to many persons.
With respect to my finding that the capital felony was committed while the Defendant was engaged, or was an accomplice, in the commission of or an attempt to commit, or flight after committing or attempting to commit any robbery, rape, arson, burglary, kidnapping or aircraft piracy or the unlawful throwing, placing, or discharging of a destructive device or bomb, this circumstance was not contested by the Defendant, and the record reflects he pled guilty to not only Count I of the indictment relating to the felony-murder, but also to attempted robbery.
With respect to my finding that the capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody, the evidence and record clearly establishes this circumstance existed after the Defendant, the companion, and a hostage left the building they were in, and were ordered and/or asked to surrender.
The capital felony was committed during the time and for the purpose of avoiding or preventing the Defendant's lawful arrest.
With respect to my finding that the capital felony was committed for a pecuniary gain, there was no evidence to the contrary and overwhelming evidence to support said finding.
With respect to my finding that the capital felony was especially heinous, atrocious, or cruel, the Defendant's acts, after his companion on more than one occasion suggested that they surrender, and after the Defendant received knowledge that he was surrounded, were outrageously wicked and vile, and showed an utter indifference to the suffering of others. His acts were pitiless.
In addition to the mitigating circumstances found to exist, the Defendant presented evidence as to other mitigating circumstances, only one of which needs to be commented upon.
The Defendant's wife testified that the Defendant was under the domination of the Defendant's companion at the time of this incident. However, the testimony was to the effect that the domination existed prior to this incident, and that this domination did not result in any criminal activities on the part of the Defendant as shown by his lack of prior criminal activity.
Additionally, the evidence established that at the time of the crime the Defendant was the dominating person, and accordingly the Court found this mitigating circumstance did not exist.
Based upon the above and foregoing, the Court finds that sufficient aggravating circumstances exist based upon the entire proceedings as well as the partial list of reasons set forth in support of the individual findings, and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances, and accordingly concurs in the advisory sentence of the jury and sentences you, Myron David Fleming, to death.