407 So.2d 894 (1981)
Jimmy Lee SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 55961.
Supreme Court of Florida.
November 12, 1981.
Rehearing Denied January 28, 1982.
*896 Michael M. Corin and John D.C. Newton, II, Asst. Public Defenders, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
ADKINS, Justice.
Appellant, Jimmy Lee Smith, was convicted of the first-degree murders of Bonnie Ward and her twelve-year-old daughter, Donna Strickland. The trial judge imposed the death sentence in accordance with the jury's advisory sentence recommendation. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Appellant had spent the night before the murders as a guest in Mrs. Ward's home, and during the course of the evening both of his victims had spoken disparagingly of his girlfriend and her mother. Appellant's girlfriend was referred to as a whore and her mother's childrearing abilities criticized. On the day of the murders, appellant rode with Mrs. Ward, her three-year-old son, two-year-old daughter, and Donna to run several errands. During this trip, his girlfriend and her family were again criticized, and at that time appellant evidently decided to kill Mrs. Ward and Donna. On the way home from the errands, Mrs. Ward complied with appellant's request that she drive down a deserted country road to a spot where he claimed to have hidden a bundle of clothing which he wished to retrieve. After arriving at the spot, appellant ordered the children to stay in the car and forced Mrs. Ward, who by then realized that the request was a ruse, over her protestations and pleas, to accompany him on foot around a bend in the road. Once he thought that they were out of the sight of the children in the car, appellant began choking Mrs. Ward, exhorting her to "Die, Bitch." After Mrs. Ward had lost consciousness, Donna, who had left the car to look for the two adults, came upon the scene, whereupon appellant grabbed and began choking her also. Encountering difficulty in choking Donna with his hands, appellant held her by the neck with one hand and with the other took from his pocket a piece of cord which he then used to choke her.
After Donna lost consciousness, appellant undressed his still-living victims and stabbed each repeatedly in the chest, inflicting multiple wounds on both. Whatever it was that drove him still not satisfied, he proceeded to slit Mrs. Ward's throat and to cut open Donna's chest and look at her heart. Once he finished, appellant wrapped the bodies in blankets, left them in the brush, and drove the two younger children home, where he fed them and put them to bed. He was picked up the next day by an officer who saw him hitchhiking.
Appellant now asks this Court to order a new trial or, at least, a new sentencing hearing to remedy the errors which he contends occurred during his trial. We address the issues on appeal in the order in which he raises them.
First, appellant contends that he was denied due process of law and equal protection of the laws within the meaning of the Fifth and Fourteenth Amendments to the United States Constitution and article I, *897 section 9, of the Florida Constitution. In support thereof, he asserts that the trial court failed to properly instruct the jury on the weight to be given his confessions, and instead improperly commented thereon as evidence during the trial.
We do not agree with appellant's argument that the trial court improperly commented on the weight of the confession evidence during the course of the trial. The comments complained of are the following, made at various times during the proceedings:
The Court has ruled that the statement has been freely and voluntarily given by the Defendant, Jimmy Lee Smith, and admitted into evidence. It will be for your consideration at this time.
* * * * * *
The Court will rule that this statement was freely and voluntarily given. It will be admitted into evidence at this time.
* * * * * *
The Court will rule that that statement was freely and voluntarily given and will now be admitted into evidence.
We see the statements as attempts to comply with the requirement expressed in Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967), that the trial court clearly indicate, in the record, its conclusion that any confession admitted into evidence was voluntarily made:
[I]t is not for the jury to make the primary determination of voluntariness. Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity.

Id. at 544, 87 S.Ct. at 643.
Referring to the same topic, this Court stated as follows:
The requirement of the Fourteenth Amendment is that the trial judge make a determination that a confession was freely and voluntarily given before he allows it to be considered by a jury. A specific finding of voluntariness is necessary to ensure that a judge has properly met this requirement.
McDole v. State, 283 So.2d 553, 554 (Fla. 1973) (citations omitted).
The judge in the case sub judice was doing just that: making, with unmistakable clarity, a finding for the record that appellant's confessions were voluntarily made. His comments, therefore, were not improper.
Appellant's other argument, that the court failed to instruct the jury on the weight to be given his confessions, is a valid point. We do not agree, however, that the error warrants a new trial. Appellant correctly states that the "law of the case" upon which the judge must charge the jury includes the weight to be given confessions. See § 918.10(1), Fla. Stat. (1977); Fla.R. Crim.P. 3.390(a); Harrison v. State, 149 Fla. 365, 5 So.2d 703 (1942). Appellant then cites several cases in which failure to so instruct the jury was found to be grounds for reversal and award of a new trial. The cases cited are not, however, on "all-fours" with the case at hand.
In Harrison v. State the defendant was never placed on the stand and never testified before the jury. It was acknowledged that there could have been no conviction without the confession, and defendant's counsel objected to the admission into evidence of the confession. In its decision, this Court held that the trial court had erred by not instructing the jury on the law of the case because it had a duty to do so "under the circumstances of this case." Id. 5 So.2d 707 (emphasis added).
Brown v. State, 124 So.2d 481 (Fla. 1960), which was also cited by appellant and which concerned the propriety of jury instructions on degrees of homicide, simply cited Harrison as an example of how failure to advise the jury on the weight to be given a confession could be fundamental error.
Bunn v. State, 363 So.2d 16 (Fla.3d DCA 1978), cert. denied, 368 So.2d 1373 (Fla. 1979), addressed the propriety of a trial court's refusal to give the jury instructions regarding evaluation of certain admissions which the defendant had made. The district *898 court reversed the conviction, emphasizing that a request for instructions had been made:
[T]he failure of the trial court, pursuant to appellant's request for such an instruction prior to the time the jury retired, to give either the Florida Standard Jury Instruction (criminal) 2.13(i) or another appropriate instruction constituted reversible error.
Id. at 17 (emphasis added).
The case sub judice is distinguishable from those cited by appellant. The state did not rely entirely on appellant's confession to obtain a conviction. There was evidence presented, other than appellant's confession, upon which the conviction could be based. On Monday morning Bonnie Ward, Donna, and the two small children were in the Ward vehicle with defendant. They went to a hospital and visited another daughter, Dana, at about 11:30 a.m. Bonnie Ward was wearing her watch.
In mid-afternoon defendant went to a bank and attempted to cash a check. He was alone in Bonnie's automobile. When a policeman approached, defendant fled in the car. After a high speed chase, he eluded the officer.
On Tuesday defendant was arrested while hitchhiking. He had abandoned the vehicle, but had a knife and Bonnie's watch in his possession.
On Wednesday the small child was able to communicate with the officers so that they were led to the scene of the crime. This evidence was sufficient to show, beyond a reasonable doubt, that defendant was with the victims at the time of the murder. This, considered with the theft of the watch, possession of a knife suitable for use in committing the homicides, and the flight of the defendant, amounts to clear proof of the guilt of defendant.
We have held that where there exists other evidence, in addition to a confession, sufficient to sustain a conviction, failure by a court to, of its own motion, charge a jury regarding the consideration to be given said confession is not error requiring a new trial. See Brunke v. State, 160 Fla. 43, 33 So.2d 226 (Fla. 1948).
Nor contrary to the cited cases, does there seem to be any reason to doubt the validity and voluntariness of appellant's confession. During the sentencing phase he personally addressed the jury, admitted to having committed the murders, and asked for imposition of the death penalty.
It also bears note that appellant did not request that instructions be given the jury and did not object when the court failed to do so. In the cases cited, either a request for instructions was made or an objection raised to the absence thereof.
We therefore do not find the trial court's failure to instruct the jury regarding appellant's confessions to be "fundamental error," cognizable for the first time on appeal and requiring reversal of the trial court's decision. Unlike the cited cases, whatever error that may have occurred here was harmless error, and the circumstances of this case do not warrant a new trial as a result thereof.
Appellant next argues that because a complete record of the proceeding below is not available for review by this Court (appellant's counsel's closing argument at the guilt phase of the trial was not recorded), the decision should be vacated and remanded. We decline to do so because it was appellant's counsel that instructed the court reporter not to report his final argument. Clearly, had the appellant been deprived the opportunity of a complete review through no fault of his own, there would be precedent for vacating the trial court's decision. Delap v. State, 350 So.2d 462 (Fla. 1977). But the right to review by an appellate court of the whole record may be relinquished, hence, our observation in Delap that "[i]n the absence of a waiver, the defendant has a right to complete review." Id. at 463, n. 1. (emphasis added). The right to a complete review here was waived when appellant's counsel instructed the court reporter not to record his closing argument, and appellant is not entitled to a new trial on the basis of the reporter's compliance with those instructions.
*899 On the same point, appellant also argues that Rule 2.070(b), Florida Rules of Judicial Administration, mandates vacation of the trial court's decision. That rule provides:
(b) Record When trial proceedings are being reported, no part of the proceedings shall be omitted unless all of the parties agree to do so and the court approves the agreement.
While there is no showing that the parties agreed to omit recordation of appellant's counsel's closing argument, or that the court approved of such, it was, nevertheless, appellant's counsel that instructed the court reporter not to record his closing argument, and in the absence of fundamental error appellant may not now raise the matter on appeal.
Contrary to appellant's argument in his third point on appeal, we have held that section 921.141, Florida Statutes, does not violate the requirements of article V, section 2(a), Florida Constitution, by attempting to govern practice and procedure. See Dobbert v. State, 375 So.2d 1069 (Fla. 1979), cert. denied, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).
We are not convinced, as appellant next contends, that heretofore unconsidered evidence of mental deficiencies on his part compels a new trial "in the interest of justice." Appellant was examined and tested by two psychologists whose findings were then considered by the judge and jury. Although the psychologists recommended that appellant undergo further tests, he specifically declined to do so, and, at the sentencing portion of his trial, tendered no evidence regarding a possible mental deficiency.
Furthermore, despite appellant's contention to the contrary, the psychological findings which were considered are not so internally inconsistent as to be almost useless. The psychological report stated, in part:
Even if an organic disorder were found to be present, we feel that it would not minimize the long standing maladaptive features of his personality nor would it render him legally insane. The critical aspect is that Jimmy has a chronic history of difficulty in being aware of [,] accepting [,] and dealing with his feelings of anger. In fact, the personality evolution points to a profound deficiency in character development and the associated problems in impulse control. Should, however, an organic disorder be detected, we would be willing to render an opinion regarding possible mitigating circumstances.
The doctors' report is unequivocal; appellant was not legally insane.
The supplemental report which appellant now seeks to have considered was never before the trial court because at that stage of the proceedings appellant refused to undergo further testing. Now he seeks to undo his prior action. Appellant charted his own course, willingly and knowingly, and the psychological report weighed by the judge and jury was definite, proper and consistent. There was no error.
Appellant's next point on appeal is that the exclusion of three jurors who expressed opposition to the death penalty violated his Sixth Amendment right to a jury chosen from a random cross-section of the community. More specifically, appellant contends that the excusal of the three did not comport with the United States Supreme Court's ruling in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). In light of the testimony by each of the jurors in question that under no circumstances would he vote to put a person to death, we are of the opinion that the Witherspoon holding was complied with, and that they were properly excused for cause. See Fleming v. State, 374 So.2d 954 (Fla. 1979); Foster v. State, 369 So.2d 928 (Fla.), cert. denied, 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979); and Jackson v. State, 366 So.2d 752 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979).
Appellant's sixth point on appeal, that the trial court erred by allowing him to waive representation by counsel at the sentencing phase of his trial, is also without *900 merit. At the outset, we note that self-representation by a defendant in a criminal proceeding is not per se improper. "[I]n the absence of unusual circumstances an accused who is mentally competent and sui juris has the right to conduct his own defense without counsel by virtue of Section 11, Declaration of Rights, Florida Constitution." State v. Capetta, 216 So.2d 749, 750 (Fla. 1968), cert. denied, 394 U.S. 1008, 89 S.Ct. 1610, 22 L.Ed.2d 787 (1969). The waiver of one's right to counsel must, however, be an intelligent and knowing relinquishment of such representation. This Court, when faced with a question regarding the propriety of such a waiver in Goode v. State, 365 So.2d 381 (Fla. 1978), cert. denied, 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979), cited the decision of the United States Supreme Court in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), which noted:
Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that record will establish that "he knows what he is doing and his choice is made with eyes open."
Here, weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel. The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. The trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel, and that Faretta would be required to follow all the "ground rules" of trial procedure. We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.
Id. at 835-36, 95 S.Ct. at 2541. (Citation and footnotes omitted.)
Applying the Faretta criteria in the case sub judice, we do not find appellant's waiver of counsel to have been improperly permitted. The record makes it quite clear that appellant wanted to make the closing argument at the sentencing phase of his trial himself rather than have his attorney do so. It also makes it clear that he was literate, competent, and understanding. He was apprised of the danger of what he was doing, of the seriousness thereof, and that a very real result might be imposition of the death penalty. He was warned that the prosecutor would not "back up," regardless of who made the closing argument for the defense, and would vigorously seek the death penalty. He was strongly urged to allow his attorney to make the closing argument, but insisted on doing so himself.
We need not inquire whether appellant knew all of the specifics regarding aggravating and mitigating circumstances and the like. Paraphrasing the opinion in Faretta, we need make no assessment of how well or poorly appellant mastered the intricacies of the sentencing process, for his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself. The trial judge questioned appellant closely concerning his desire to make the closing argument himself. Appellant was warned of the dangers of what he was doing and discouraged from doing so. He was not lightly allowed to follow the course which he chose. The court fulfilled its obligation, as enunciated in Faretta, and no reversible error occurred.
In the seventh point on appeal, appellant contends that the trial court erred in sentencing by considering his uncorroborated confessions to various crimes when there was "no showing of a corpus delicti for any prior offenses." Appellant argues that the trial judge's finding of a significant history of prior criminal activity, when there was no evidence of such other than statements made by appellant, violated the *901 corpus delicti principle. However, that principle, which requires some independent proof of a crime other than a confession before one may be convicted, does not mandate the reversal suggested, for the following reasons.
Section 921.141, Florida Statutes (1979), lists the aggravating and mitigating circumstances to be considered in determining an appropriate sentence in a capital case. Section 921.141(6)(a) provides that lack of a significant history of prior criminal activity is to be considered a mitigating factor. Noting that aggravating circumstances must be proven beyond a reasonable doubt, State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), and the particular need for accuracy when a life is at stake, appellant argues that there must be competent, independent proof of significant prior criminal activity in order to negate the mitigating circumstance established by section 921.141(6)(a). We have, however, specifically held otherwise.
In Washington v. State, 362 So.2d 658 (Fla. 1978), cert. denied, 441 U.S. 937, 99 S.Ct. 2063, 60 L.Ed.2d 666 (1979), a death sentence was appealed from in part on the basis of an allegedly improper refusal by the court to consider lack of a significant history of prior criminal activity as a mitigating circumstance. The trial court had refused to recognize the alleged mitigating circumstance because the appellant had carried on a course of burglaries, had stolen property for a significant period of time, and had confessed and testified to such in open court. The appellant asserted that the trial court had acted improperly, that on the basis of our decision in Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977), previous convictions are required to negate section 921.141(6)(a). We upheld the trial court, however, observing:
[Appellant] misconstrues the holding of Provence. That case construed Section 921.141(5)(b) which requires previous conviction of another capital felony involving the use or threat of violence... . Section 921.141(6)(a) makes no reference to conviction and, hence, Provence has no application to the instant case.
Washington, at 666-67.
Thus in the case sub judice, as in Washington, the trial court, on the basis of confessions made by the appellant, properly found that the appellant had a significant history of prior criminal activity which negated the otherwise applicable mitigating circumstance of section 921.141(6)(a).
Nor, proceeding to appellant's eighth point on appeal, did the trial court err in sentencing by refusing to find as mitigating circumstances that the appellant was under the influence of extreme mental or emotional disturbance and/or that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. See sections 921.141(6)(b) and (f). Although consideration of all mitigating circumstances is required by the United States Constitution, Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the decision of whether a particular mitigating circumstance in sentencing is proven and the weight to be given it rest with the judge and jury. Lucas v. State, 376 So.2d 1149 (Fla. 1979).
The appellant cites several cases in which the mitigating circumstances of sections 921.141(6)(b) and/or (f) were applied as a result of evidence pertaining to the defendant's state of mind. In two of these cases, Burch v. State, 343 So.2d 831 (Fla. 1977), and Shue v. State, 366 So.2d 387 (Fla. 1978), we reversed death sentences because the trial judges had ignored the juries' recommendations of a life sentence. Although both cases demonstrate that evidence regarding a defendant's mental state may be taken in mitigation, their greater emphasis seems to be on the deference which is to be accorded a jury's sentencing recommendation. The jury here recommended imposition of the death penalty.
Also cited is our decision in Huckaby v. State, 343 So.2d 29 (Fla.), cert. denied, 434 U.S. 920, 98 S.Ct. 393, 54 L.Ed.2d 276 (1977), *902 in which we vacated a death sentence for failure by the trial court to recognize the existence of certain mitigating circumstances. Explaining why the lower court ought to have recognized the mitigating circumstances, we noted:
The trial judge ignored every aspect of the medical testimony in this case when he found that no mitigating circumstances existed. There was almost total agreement on Huckaby's mental illness and its controlling influence on him. Although the defense was unable to prove legal insanity, it amply showed that Huckaby's mental illness was a motivating factor in the commission of the crimes for which he was convicted. Our review of the record shows that the capital felony involved in this case was committed while Huckaby was under the influence of extreme mental or emotional disturbance, and that while he may have comprehended the difference between right and wrong his capacity to appreciate the criminality of his conduct and to conform it to the law was substantially impaired. These findings constitute two mitigating circumstances which should have been weighed in determining his sentence.
Id. at 33-34.
While the situation in Huckaby warranted an invasion of the trial court's domain, such is not the case here. The trial court here did not ignore every aspect of the medical testimony regarding the appellant; rather, it found that the medical testimony simply did not compel application of a mitigating factor in sentencing. Unlike the court in Huckaby, the trial court did not improperly refuse to recognize certain mitigating circumstances; rather, it considered the evidence presented regarding the defendant's mental state and then made its decision, which we are not to disturb unless absolutely required to do so.
Relevant to this situation is our decision in Lucas v. State, wherein we refused to interfere with the trial court's decision regarding mitigating circumstances, noting:
Appellant next argues that the evidence supports the existence of at least two mitigating circumstances which the trial court failed to take into consideration. During the sentencing hearing, defense counsel produced a psychiatrist who testified that appellant knew right from wrong, but suffered from a sociopathic personality resulting in defective judgment. Other witnesses testified to appellant's abnormal appearance and behavior on the evening of the shooting. Appellant contends that this testimony proves that he was under extreme mental or emotional disturbance at the time of the commission of the offense (section 921.141(6)(b)) and could not appreciate the criminality of his conduct. (Section 921.141(6)(f)). In response, the state argues that it lies within the province of the trier of fact to weigh the evidence presented. We agree. The jury and the judge heard the testimony, and apparently concluded that the testimony should be given little or no weight in their decisions. We find nothing in the record which compels a different result.
376 So.2d at 1153-54.
In Hargrave v. State, 366 So.2d 1 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979), we considered a similar question and held:
Returning to appellant's argument that the trial judge erred in failing to find the mitigating circumstances delineated above, we respond that the jury and the judge could have resolved the evidence in favor of appellant's position, but neither was compelled to do so. We are not here dealing with a case where either the jury or the court considered matters it should not have considered or failed to consider matters it should have considered. Appellant simply disagrees with the force and effect given to the testimony of a psychologist and a psychiatrist at the sentencing hearing... . [T]he trial judge did not ignore or fail to consider the psychological evidence bearing on mitigation. Obviously, he and the jury were not persuaded that it provided a sound *903 basis for establishment of the statutory mitigating circumstances.
Id. at 5-6 (emphasis added).
Clearly then, we are not warranted to disturb the trial court's findings. There was nothing improper in the conclusions reached nor in the method by which they were reached. The decision was one within the domain of the judge and jury, and a reversal thereof is not justified simply because appellant draws a different conclusion from the testimony presented than did the jury.
The final point raised on appeal by appellant is that the evidence presented was insufficient to prove that he murdered Donna Strickland to hinder law enforcement. He objects to the trial court's first finding of fact as to aggravating circumstances, which reads, in part:
The capital felony charged in Count II of the Indictment was committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws... . The Court specifically finds that the defendant than killed Donna Lynn Strickland to keep her from testifying against him for the murder of Bonnie Myrle Ward which she saw the defendant commit.
Appellant suggests several reasons why the above finding is improper, but, because of the court's second finding we need not address the merits of appellant's argument.
In his second finding of fact as to aggravating circumstances, the trial judge found that the murders for which appellant was convicted were committed in an especially heinous, atrocious, and cruel manner. The finding also noted that the manner in which appellant cut open the chest of Donna Strickland was particularly heinous, atrocious, and cruel and that "even were there no other aggravating circumstances in this case, this circumstance alone warrants the imposition of the death penalty." Although we agree that appellant's action in cutting open his younger victim's chest was particularly loathsome and reprehensible, we are of the opinion that the more heinous, atrocious, and cruel aspect of the killings was the manner in which he strangled his victims. Appellant described how both women struggled, shook spasmodically and looked into his eyes as he choked them. Both strangulations were prime examples of the "conscienceless or pitiless crime which is unnecessarily torturous to the victim" which we have established as heinous, atrocious, and cruel. See State v. Dixon, at 9.
Discussion of the proper basis for finding the killings heinous, atrocious, and cruel aside, the important point is that the trial court found two aggravating circumstances. Thus even were we to rule that Donna's murder was not committed to keep her from testifying against appellant, there would remain the aggravating circumstance of the heinous, atrocious, and cruel manner of the killings, and the imposition of the death penalty herein would still be justified. As we noted in Dixon:
When one or more of the aggravating circumstances is found, death is presumed to be the proper sentence unless it or they are overridden by one or more of the mitigating circumstances provided in Fla. Stat. § 921.141(7), F.S.A. [Now § 921.141(6)]
Id. at 9. Because there are two aggravating circumstances, and no mitigating ones, the sentence of death would not have to be overturned even if we were to find the first aggravating circumstance improper. The second finding alone is sufficient basis for imposition of the death penalty. Consideration of the merits of the first finding would be for naught, and so we decline to do so.
In light of the foregoing, we find that the trial court's decision was proper. Accordingly, the conviction and sentence imposed by the trial court are affirmed.
It is so ordered.
BOYD, OVERTON and McDONALD, JJ., concur.
ALDERMAN, J., specially concurs with an opinion, with which BOYD, J., concurs.
SUNDBERG, C.J., dissents.
*904 ALDERMAN, Justice, concurring specially.
Although I concur with the affirmance of the conviction and sentence and the rationale of the majority for this affirmance, I would not avoid the issue of whether the trial court properly found the aggravating circumstance that Smith murdered Donna Strickland to hinder law enforcement. The majority finds it unnecessary to resolve this question because there is at least one viable aggravating circumstance and no mitigating circumstances, and therefore under State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), death is presumed to be the proper sentence.
In my view, the trial court properly found that Smith murdered Donna to hinder law enforcement. In its sentencing order, the trial court explains its justification for this finding:
1. The capital felony charged in Count II of the Indictment was committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws. The evidence shows that the defendant coolly and calmly lured Bonnie Myrle Ward and her twelve year old daughter, Donna Lynn Strickland, to drive their automobile down a lonely dirt road through the use of a lie that the defendant had clothing cached in said location which he needed to retrieve. The defendant then caused Bonnie Myrle Ward to leave the car with him and was in the process of killing her through the means charged in the Indictment when Donna Lynn Strickland attempted to come to the aid of her mother. The Court specifically finds that the defendant then killed Donna Lynn Strickland to keep her from testifying against him for the murder of Bonnie Myrle Ward which she saw the defendant commit.
Accordingly, I would find that the trial court properly found two aggravating circumstances.
BOYD, J., concurs.