201 So.2d 599 (1967)
Fred Russell GRONEAU, Appellant,
v.
STATE of Florida, Appellee.
No. 927.
District Court of Appeal of Florida. Fourth District.
July 31, 1967.
*600 Charles J. Rich and Frederick P. Tiballi, of Allsworth Doumar & Schuler, and Robert A. Brown, Fort Lauderdale, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Fred T. Gallagher, Asst. Atty. Gen., Vero Beach, for appellee.
CROSS, Judge.
The appellant (defendant) was charged by information with the crime of attempted breaking and entering with the intent to commit a misdemeanor, to wit, petty larceny. He was tried before the court without a jury and upon the court finding and adjudging the defendant guilty was sentenced for a term of two years in the state prison.
On appeal the defendant contends that (1) the state failed to prove beyond and to the exclusion of a reasonable doubt that the defendant had the necessary criminal intent and had committed an overt act towards the commission of the crime charged beyond that of mere preparation; (2) that the court erred when it entered its finding of guilt and judgment since the weight and probative force of the evidence and the law was not inconsistent with the innocence of the defendant. A determination of these questions will necessarily entail a consideration of the evidence which was presented to the court.
An examination of the testimony discloses that on February 25, 1966, at approximately 5:00 a.m., a police officer of the City of Hollywood while on patrol and patrolling through an alley in that city in the *601 vicinity of the 1400 block of North Dixie Highway heard a noise that sounded like a metal object striking the ground. The officer stopped his vehicle and while proceeding to investigate observed a truck parked in the alley. The officer shined his spotlight on the truck and saw a figure (the defendant) under the truck. The officer commanded the defendant to come out from underneath and get up against the wall. A person yelled back, "I am up against the wall". Upon hearing this voice the officer assumed that there was another person at that location and called for a police back-up unit to help him. After the arrival of the back-up unit the officer walked over to the truck and saw the defendant standing in front of it. A companion of the defendant was against the rear of a building. An investigation of the alley and buildings was conducted and the officer found a screwdriver lying directly in front of the truck the defendant was under. A hammer and another screwdriver were lying near the doorjamb of one of the buildings. Socks were also found in a trash can which was directly underneath a window that was broken. The screen belonging to the broken window was lying on the floor in the building in question and a spring from the window was missing. The officer inquired as to the ownership of the tools and the socks. The companion of the defendant admitted ownership and the intention of using the socks on his hands. Upon further inquiry and questioning by the officer the defendant in response to a question of what he was doing in the alley at that time of the morning replied that he and his companion had been out with some girls and were hiding from some persons that were supposedly chasing them.
At the trial the defendant took the stand and testified in his own behalf. He denied making the above statement and indicated it was his companion who made it. The defendant further testified that he was in the restaurant business with his mother, and on the morning of February 25, 1966, he did not close the business until around 2:30 a.m., whereupon he, his girl friend and his companion left to go to his boat to pump out the water that had accumulated from the rain which occurred that day. They were there approximately twenty or thirty minutes and while the water was being pumped out the defendant consumed a few beers and he and his companion engaged in a conversation, the substance of which was about a girl the companion had met the preceding day. It appears after the water was pumped out the three returned to the restaurant where the girl friend could obtain her car and proceed home. It being at an early hour, approximately three or three-thirty in the morning, the defendant followed the girl home who lived at the edge of Hollywood. Upon leaving the girl's home the defendant and his companion then proceeded to find the home of the girl the companion had met during the preceding day. In their endeavor to find the girl they got lost and subsequently stopped at a bar, consumed a few more beers, received instructions and proceeded on their way until they located the house. They then parked the car on the opposite side of the street a house or two away, stating the reason for this was that the hour was late and the neighbors would probably be mad at the girl for someone coming around at that late hour. After the car was parked the companion got out of the automobile and proceeded down the street and into the alleyway. Several minutes elapsed and the defendant stated he then got out of his car and started looking for his companion to tell him that he wanted to leave because of the late hour. Defendant further stated that as he walked into the alley and got near the back of the building he saw his companion standing next to the building as if he was using the bathroom, and the next thing he knew a light flashed at which time he got under a truck.
The owner of the building in question testified that he inspected the building every day at 5:00 p.m. when he left work and on February 24, 1966, at 5:00 p.m., the day *602 prior to the breaking, everything was in order.
The initial question presented on appeal by the defendant is whether he had the necessary criminal intent and had committed an overt act of the nature requisite to legally constitute the offense of an attempted breaking and entering with the intent to commit a misdemeanor, to wit, petty larceny.
The attempt to commit a crime involves the idea of an incompleted act as distinguished from the completed act necessary for the crime. In the case of Gustine v. State, 1923, 86 Fla. 24, 26, 97 So. 207, 208, the Supreme Court of Florida furnished a definition and general guiding principles necessary to constitute an attempt to commit a crime:
"What acts will constitute an `attempt' to commit a crime is often difficult of determination. Of necessity, each case must be determined on its own facts. Generally, there must be an intent to commit a crime, coupled with an overt act apparently adapted to effect that intent, carried beyond mere preparation, but falling short of execution of the ultimate design. Bouvier's Law Dict. (3d Rev.) vol. 1, title `Attempt'; 8 R.C.L. 276; 1 Wharton's Crim. Law (11th Ed.) § 212; McClain's Crim. Law, § 222; 3 Am. & Eng. Enc. of Law (2d Ed.) 250; Morton v. State, 72 Fla. 265, 73 So. 187; Hogan v. State, 50 Fla. 86, 39 So. 464, 7 Ann.Cas. 139; Graham v. People, 181 Ill. 477, 55 N.E. 179, 47 L.R.A. 731."
In applying the above principles where the crime remains unfinished and the defendant is charged with the attempt, two elements are essential: (1) a specific intent to commit the crime; and (2) an overt ineffectual act done towards its commission.
We will first deal with the element of a specific intent to commit the crime.
It is important to bear in mind the nature and ingredients of the alleged crime for the defendant is charged not for what he has affected, but for what he intended to affect; not only for his act, but for the intent with which he did that act.
While it is essential that the overt act must be coupled with the intent, the intent must be to carry out what constitutes a completed substantive crime. The accused must have intended to accomplish the particular crime which is the basis of the charge against him. He cannot be convicted of an attempt to commit a crime which he did not intend to commit. The particular intent is essential to constitute the crime. Although an overt act does not establish the particular intent to commit a specific crime, yet intent, being a state of mind, or mental process, may be proved by the statement or act of the person whose act is being scrutinized and may also be inferred from the facts and circumstances as is the case in consummated crimes. 1 Wharton Crim. Law, Attempts, § 234 (12th Ed.). State v. Tomblin, 1942, 124 W. Va. 264, 20 S.E.2d 122; State v. Leach, 1950, 36 Wash.2d 641, 219 P.2d 972.
In the case at bar the defendant stated that his intention was merely to hide from some persons who were supposedly chasing him and his companion because they had been out with some girls. The trial court was of course not bound to accept this statement as true. It was bound to weigh the statement against the conduct of the defendant and infer from all the circumstances what his intention really was. As tending to indicate that defendant had the specific intention to commit the crime as charged, there was in evidence the fact that he and his companion were apprehended in an alleyway, a place far removed from their homes, at 5:00 a.m. When apprehended in the alleyway they were in close proximity to a building which contained a small window. The window had a broken jalousie; the screen belonging to the window was pushed in and lying on the floor inside, there was a spring missing from the window in question. The owner *603 of the building testified that he inspected the building every day at 5:00 p.m. when he left work and that on February 24, 1966, at 5:00 p.m., the day prior to the breaking, everything was in order. There was also the fact that the investigating officer found a screwdriver near the window in question and a hammer and another screwdriver lying in the doorjamb of the next building. Socks were also found in a trash can directly under the window and the defendant's companion stated that he was going to put the socks on his hands. When the investigating officer entered the alleyway the defendant hid under a truck located near the building in question and would not come out until prompted by the investigating officer. We find the evidence sufficient to warrant the court's conclusion that defendant's intention was to commit the crime charged.
We next deal with whether the court could reasonably have found that the defendant committed an overt ineffectual act done towards the commission of the crime.
Mere intention to commit a specific crime does not amount to an attempt. Preparation alone is not sufficient. Something more is required than mere menace, preparation or planning. The attempt is complete and punishable, when an act is done with intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption, or for other extrinsic cause. State v. Wilson, 30 Conn. 500, 506; State v. Enanno, 96 Conn. 420, 427, 114 A. 386. The act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. There must be some appreciable fragment of the crime committed and it must be in such progress that it would be consummated unless interrupted by circumstances independent of the will of the attempter. It is not, however, essential that the actor would have actually succeeded if he had followed the course of conduct upon which he had embarked. State v. Mazzadra, 1954, 141 Conn. 731, 109 A.2d 873. 1 Wharton Criminal Law, Attempt, § 224 (12th Ed.).
In the case at bar the defendant and his companion had driven several miles from their homes in order to arrive at the alleyway adjoining the building in question. The defendant and his companion had to walk across the street from where they had parked their car to reach the alleyway. Defendant's companion admitted the tools found by the investigating officer were his; these tools had to be carried from the car to the building in question and were of the type that could be used in the commission of the crime of breaking and entering. On these facts it was logical to conclude that the defendant had progressed so far in the perpetration of the intended crime that he would have completed it if he had not been interrupted by the arrival of the investigating officer. The crime was one which was apparently possible for the defendant to commit. The window was at a height which was reachable by defendant. In short, the court was warranted in concluding that defendant had so far progressed in the commission of the intended crime that the defendant committed the necessary overt ineffectual act.
Accordingly we find the trial court was eminently correct when it determined that the state had proved beyond and to the exclusion of a reasonable doubt that the defendant had the necessary criminal intent and had committed an overt act toward the commission of the crime charged beyond that of mere preparation.
The final question for our determination is whether the weight and probative force of the evidence was not inconsistent with the innocence of the defendant.
In the case at bar the state relied heavily upon circumstantial evidence. The quantum of proof required to support a conviction on circumstantial evidence has been set forth in the case of Harrison v. *604 State, Fla.App. 1958, 104 So.2d 391, 394, as follows:
"When circumstantial evidence is relied upon for conviction in a criminal case, the circumstances, when taken together, must be of a conclusive nature and tendency, leading on the whole to a reasonable and moral certainty that the accused, and no one else, committed the offense. If the facts in proof are equally consistent with some other rational conclusion than that of guilt, the evidence is insufficient. If the evidence leaves it indifferent as to which of several hypotheses is true, or merely establishes some finite probability in favor of one hypothesis rather than another, such evidence cannot amount to proof, however great the probability may be. It is the actual exclusion of each other reasonable hypothesis which clothes mere circumstances with the force of proof. Circumstantial evidence which leaves nothing more than a suspicion that the accused committed a crime is not sufficient to sustain a conviction."
In the present case trial by jury had been waived, the trial judge served as both trier of the fact and as arbiter of the law and this reviewing court will not retry or substitute its judgment as to the guilt or innocence of the defendant for that of the judge who saw and heard the witnesses, passed upon their credibility and resolved the conflicts of testimony where there is in the record evidence by competent witnesses of every essential element of the offense charged. Smith v. State, Fla.App. 1960, 118 So.2d 257; Farley v. State, 1924, 88 Fla. 159, 101 So. 239. The trial judge's findings were not only consistent with the guilt of the defendant but also inconsistent with his innocence. The evidence does not leave indifferent which of several hypotheses is true. The only true hypothsis which may be drawn from the evidence is that of guilt.
The trial judge determined the evidence to be sufficient to sustain all of the essential elements of the crime and our study of the record sustains his judgment.
Affirmed.
WALDEN, C.J., and ANDREWS, J., agree to conclusion.