593 So.2d 260 (1992)
Jean ARIAS, Appellant,
v.
The STATE of Florida, Appellee.
No. 89-983.
District Court of Appeal of Florida, Third District.
January 14, 1992.
*261 Bierman, Shohat and Loewy and Donald I. Bierman and Pamela I. Perry, Miami, for appellant.
Robert A. Butterworth, Atty. Gen., and Michael J. Neimand, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and HUBBART and COPE, JJ.
PER CURIAM.
Jean Arias appeals her convictions and sentences for attempted first degree murder and for solicitation to commit murder. We reverse.
Arias was accused of trying to kill an infant born with severe birth defects. Shortly after the child was born, she was placed under special nursing supervision twenty four hours a day. Arias was the Director of Nursing for Care Plus, which provided medical care for the child. Several nurses, including Arias, administered pain killing medication periodically to ease the child's suffering. The child was the granddaughter of the physician who ran Care Plus.
Arias contacted a nurse, Judy Felsenstein, and told her she needed someone to work Easter weekend. Arias also discussed a plot to kill the child by administering an overdose of pain medication. Felsenstein recommended that Arias call Etiole Means. Means and Felsenstein had both worked with Arias in the past. Arias replaced Means at one previous place of employment.
The three women met at a restaurant and discussed the plan to kill the child. *262 Arias told Means and Felsenstein that the child's grandfather was aware of the plan and approved of it. Means testified that after she applied for the temporary nursing position, Arias gave Means a bottle of medication, Hycomine, which was to be administered to the child. A very small amount of the medication given to the child would have been fatal.
After receiving the medication, Means became worried and called police to tell them about the murder plot. Means was at first reluctant to say who was involved in the plot, but she later told the police everything after they threatened to prosecute her. Before the plot was to be carried out, the police went to Arias' home and arrested her.
Prior to trial, the state filed several motions in limine. The state sought to prohibit the defense from asking Means about Means' alleged reputation for drunkenness and alleged homosexuality. Arias sought to introduce the evidence of Means' homosexuality for impeachment purposes. Arias claimed that Means harbored ill feelings toward her after Arias rebuffed Means' homosexual advances. Arias also wanted to show that Means and Felsenstein were not wholly independent and unrelated witnesses, as claimed by the state, because they had allegedly been homosexual lovers. The trial court excluded all testimony concerning Means' homosexuality.
The state also sought to exclude general testimony regarding Means' history of alcoholism, although the state conceded that specific instances of drunkenness may be relevant and should be admitted.
During the state's opening statement, the prosecutor told the jury that the child was still "alive to smile on her first birthday." Arias objected to the comment. The trial court overruled the objection but instructed the prosecutor to limit his comments on the child to merely stating that the child was alive.
Two Metro Dade Police Department officers testified, during the trial, to certain statements Means made to them. Arias objected to the statements, arguing that the state was using the testimony to bolster Means' testimony with prior consistent statements. The trial court overruled the objections.
During the trial, Arias' attorney was contacted by Doctor Donald Poster who told defense counsel that Means said she was being forced to testify. The trial court held a hearing concerning the doctor's allegations. He testified that he treated Means for a previous heart condition. Dr. Poster said he never treated Means for emotional or mental problems, but only for physical illnesses. The doctor told defense counsel that after a physical examination (which occurred approximately ten months before the trial), Means told Dr. Poster she was being forced to testify and that if she did not, she would be prosecuted. Dr. Poster also said Means told him that testifying was something she could not get out of and she felt she had to proceed and say certain things. Arias' attorney asked the court to investigate the doctor's statements and to allow Arias to call Dr. Poster if Means denied making the statements or denied being coerced to testify. The court appointed a lawyer to represent Means, who stated that she was not coerced into testifying and that she was not threatened with prosecution. The prosecutor argued that Dr. Poster had treated Means for anxiety in the past[1] and, as such, any communications between the doctor and Means were privileged under the psychotherapist/patient privilege. The trial court agreed and excluded all testimony concerning communications between Means and the doctor.
Arias testified in her own defense. During the state's cross-examination, the prosecutor pointed out that the child's grandfather's attorney had been in the courtroom several times during the trial and had conversed with Arias' attorney. The state asserted throughout the trial that Arias conspired with the grandfather to kill the child.
*263 After Arias' testimony was completed, Arias attempted to present several character witnesses to testify as to her truth and veracity.[2] Arias contended that since her credibility had been attacked vigorously during cross-examination, she was entitled to put on evidence of her general reputation for truth and veracity. The trial court denied the request. At the close of all the evidence Arias moved for a judgment of acquittal. The motion was denied. Arias was convicted of attempted first degree murder and of solicitation to commit murder and has appealed.
Arias argues that the evidence presented by the state did not support the attempted first degree murder conviction and that her motion for judgment of acquittal on that count should have been granted. We agree. The elements of attempt are: 1) a specific intent to commit the crime, and 2) a separate overt, ineffectual act done towards its commission. See Fleming v. State, 374 So.2d 954 (Fla. 1979) and cases cited therein. "The overt act must reach far enough towards the accomplishment of the desired result to amount to a commencement of the consummation. There must be some appreciable fragment of the crime committed... ." Robinson v. State, 263 So.2d 595, 596-97 (Fla. 3d DCA 1972).
In this case, the state presented evidence which showed that Arias met with Means and Felsenstein, discussed the murder plot, and then gave Means the bottle of Hycomine. The plot to kill the child went no further. The discussions occurred four days before the murder was to take place. Means testified that she had not decided to help Arias kill the child and Means never took any active steps toward completion of the crime. The evidence shows that the acts committed by Arias were only those of preparation to commit the crime and did not rise to the level of overt acts nearing consummation of the crime. Therefore, the evidence was not sufficient to sustain a verdict of attempted first degree murder. See Robinson; see also Gervin v. State, 212 Tenn. 653, 371 S.W.2d 449 (1963) (defendant's hiring and attempt to persuade person to commit murder amounted to mere preparation only and was not an attempt to commit first degree murder). The murder conviction is therefore reversed.
We also reverse the conviction for solicitation to commit murder and remand for a new trial on that charge. This is necessitated because of evidentiary errors which we can not say were harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
The trial court improperly excluded Dr. Poster's testimony. There is no general doctor/patient privilege in Florida, see Fidelity & Casualty Co. v. Lopez, 375 So.2d 59 (Fla. 4th DCA 1979), and the communications between Means and Dr. Poster did not fall within Florida's limited psychotherapist/patient privilege. See § 90.503, Fla. Stat. (1989).[3] Dr. Poster was not a *264 psychotherapist as defined by the statute when Means purportedly spoke to him about the trial and her testimony. Means saw Dr. Poster for the treatment of purely physical problems, not emotional ones. At no time, did Dr. Poster diagnose or treat Means for mental or emotional problems. As such, there was no privilege and the testimony could not have been excluded on that basis. Id.
Additionally, if Means denied having made the statements (which she did during the trial court's hearing out of the presence of the jury),[4] Arias should have been able to impeach her testimony by calling Dr. Poster as a witness. The doctor's testimony would have had a direct bearing on Means' credibility which was clearly an issue in the case, especially in light of the fact that Means was the state's star witness and Arias' primary accuser. The exclusion of the doctor's testimony was reversible error and thus a new trial is required.
Arias next argues that she was improperly precluded from cross-examining Means about Arias' rebuff of Means' homosexual advances. Arias sought to show that Means had a possible bias against Arias. The trial court should have allowed the cross-examination. See Sias v. State, 416 So.2d 1213 (Fla. 3d DCA) (prosecutor should have been allowed to cross-examine witness as to possible homosexual relationship to show bias), review denied, 424 So.2d 763 (1982); United States v. Nuccio, 373 F.2d 168, 171 (2d Cir.) (cross-examination concerning rebuffed homosexual advances should have been allowed for the limited purpose of showing witness' motive and bias), cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 623 (1967).
Throughout the trial, the state pointed out that Means and Felsenstein (the state's primary witnesses against Arias) were independent witnesses, and had no connection with each other (besides the fact that the two women were friends). Arias sought to introduce evidence that the two women were not independent witnesses because they may have had a homosexual relationship with one another in the past. The trial court excluded all mention of the possible relationship. Because the state had opened the door (by asserting there was no relationship between the two witnesses), the trial court should have allowed Arias to cross-examine Means and Felsenstein regarding their possible homosexual relationship, for the purpose of showing possible bias. See Sias v. State, 416 So.2d at 1218.
Arias also argues that the trial court improperly excluded evidence as to her truth and veracity. She attempted to call several character witnesses after a vigorous cross-examination of Arias by the state, which Arias argues constituted an attack upon her credibility. After reviewing the record, we cannot say that the trial court abused its discretion in excluding the character witnesses, but since we remand for a new trial, we comment on the issue.
The commentators on Florida evidence acknowledge that there is some ambiguity regarding the proper interpretation of subsection 90.609(2), Florida Statutes (1989), the wording of which differs slightly from the counterpart Federal Rule of Evidence. Subsection 90.609(2) provides, "evidence of a truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence." Federal Rule of Evidence 608 uses identical language, but adds the phrase "or otherwise" at the end of the sentence.
The question is whether subsection 90.609(2) codified preexisting Florida law, or whether the subsection represented a change in the law. According to Professor Ehrhardt, the Reporter for the Evidence Code:
The drafters of the Code eliminated the words "or otherwise" which appear at the end of the corresponding sentence in Federal Rule 608(a). The words were omitted because of the concern that they would expand the pre-Code law by being *265 interpreted to permit evidence of truthful character after any attack on credibility. The intent of the drafters was to maintain the existing law in Section 90.609(2).

C. Ehrhardt, Florida Evidence, § 611.2, at 354 (2d ed. 1984) (emphasis added). "The better view is that Section 90.609(2) did not change the pre-Code law and that the section refers to one of the situations when evidence of truthful character will be admitted." Id. § 609.4, at 333.
By its express terms, subsection 90.609(2) allows evidence of truthful character to be admitted "after the character of the witness has been attacked by reputation evidence." In addition, however, Florida law traditionally has recognized that cross-examination can be of such a nature that it amounts to an attack on the witness's character for truthfulness. Professor Graham has summarized the law as follows:
Supporting evidence in the form of reputation testimony for truthful character may also be admissible in situations where the witness has had his or her character for truthfulness assaulted on cross-examination. The trial court must determine whether the net effect of the cross-examination constitutes a sustained direct attack on the witness's character for truthfulness.
M. Graham, Handbook on Florida Evidence § 609.1, at 412 (1987) (footnote omitted). See Whaley v. State, 157 Fla. 593, 596-97, 26 So.2d 656, 658 (1946); see also McCormick, Evidence § 49 (3d ed. 1984); 3 Weinstein, Evidence para. 608[08] (1991); cf. United States v. Danehy, 680 F.2d 1311, 1314 (11th Cir.1982); United States v. Jackson, 588 F.2d 1046, 1055 (5th Cir.), cert. denied, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). We conclude that the views of Professors Ehrhardt and Graham on this point are correct.
The state conceded that it improperly bolstered Means' testimony through the introduction of prior consistent statements. However, the state argues that the officers' testimony was merely cumulative and reversal on this issue is not required. While we have already determined that reversal is required for other reasons, we briefly address this issue. Bolstering a nonparty witness' testimony through introduction of prior consistent statements is precluded except as permitted under the Evidence Code. See § 90.801, Fla. Stat. (1989). Arias' objections should have been sustained. See Reyes v. State, 580 So.2d 309 (Fla. 3d DCA 1991). "[A] witness' prior consistent statements are generally inadmissible to corroborate that witness's testimony." Jackson v. State, 498 So.2d 906, 909 (Fla. 1986); see also Reyes; Lazarowicz v. State, 561 So.2d 392, 395 (Fla. 3d DCA 1990); Holliday v. State, 389 So.2d 679, 680-81 (Fla. 3d DCA 1980).
Arias next argues the trial court erred when it overruled Arias' objections to the prosecutor's statement that the grandfather's attorney was in the audience. We agree. The grandfather's attorney was entitled to attend the trial without giving rise to any inference that the two were coconspirators. The trial court should have sustained Arias' objections.[5]
The remaining points raised by Arias are either moot or lack merit. For the foregoing reasons, we reverse the convictions for attempted first degree murder and for solicitation to commit murder and remand for a new trial on the solicitation charge only.
NOTES
[1] Apparently Dr. Poster renewed a prescription for a drug, Ativan, which Means was taking for stress. The drug was prescribed by another physician and not by Dr. Poster.
[2] Arias had attempted to call the character witnesses earlier in the trial, but the court denied her request. The trial judge stated that he would reconsider the matter if Arias took the stand and testified.
[3] Section 90.503 states in pertinent part:

(1) For purposes of this section:
(a) A "psychotherapist" is:
1. A person authorized to practice medicine in any state or nation, or reasonably believed by the patient so to be, who is engaged in the diagnosis or treatment of a mental or emotional condition, including alcoholism and other drug addiction; or
2. A person licensed or certified as a psychologist under the laws of any state or nation, who is engaged primarily in the diagnosis or treatment of a mental or emotional condition, including alcoholism and other drug addiction.
(b) A "patient" is a person who consults, or is interviewed by, a psychotherapist for purposes of diagnosis or treatment of a mental or emotional condition, including alcoholism and other drug addiction.
.....
(2) A patient has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications or records made for the purpose of diagnosis or treatment of his mental or emotional condition, including alcoholism and other drug addiction, between himself and his psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist. This privilege includes any diagnosis made, and advice given, by the psychotherapist in the course of that relationship.
[4] Arias' attorney asked the court to allow him to recall Means and ask her if she made the statements to Dr. Poster. The trial court denied the request.
[5] Arias also argues that the prosecutor improperly stated that the child smiled on her first birthday. We agree that the statement was improper. In response to Arias' objection, the trial court properly instructed the prosecutor to limit his statements to the fact that the child was alive.