# Third District Court of Appeal

## State of Florida

Opinion filed March 8, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0083
Lower Tribunal No. F22-6632

_____

**Jose Alcazar,**
Petitioner,

vs.

**The State of Florida,**
Respondent.

A Case of Original Jurisdiction – Habeas Corpus.

Law Offices of Jason T. Forman, PA, and Jason T. Forman and Dalianett Corrales (Fort Lauderdale), for petitioner.

Ashley Moody, Attorney General and Katryna Santa Cruz, Assistant Attorney General, for respondent.

Before EMAS, GORDO and BOKOR, JJ.

BOKOR, J.

Jose Alcazar stands accused, via an amended information, of attempted first-degree murder after allegedly hiring an undercover officer to kill his ex-girlfriend's then-husband. Alcazar petitions for habeas relief from pretrial detention, contending in pertinent part, that the acts allegedly committed amount to, at most, preparatory acts in a solicitation scheme, but fail to rise to the level of an overt act sufficient to ground a charge of attempted first-degree murder. The State argues that Alcazar's alleged acts cross the line from mere preparation to an overt act well on the way to consummation of the crime of attempted first-degree murder. As explained below, we agree with the State and deny the petition.

Our sister court highlights the elements of a criminal attempt:

> Under Florida law, criminal attempt occurs when a defendant commits "any act toward the commission of [an offense prohibited by law], but fails in the perpetration or is intercepted or prevented in the execution thereof . . . ." § 777.04(1), Fla. Stat. (2009). To establish the crime of attempt, the State must prove the defendant intended to commit a crime, committed an overt act towards its commission, and failed to successfully complete the crime. See Bist v. State, 35 So. 3d 936, 941 (Fla. 5th DCA 2010). The overt act element differentiates criminal attempt from solicitation, the latter of which is completed when a person asks another to commit a crime with the intent that the other commit the crime. See State v. Johnson, 561 So. 2d 1321, 1323 (Fla. 4th DCA 1990); see also § 777.04(2), Fla. Stat. (2009). "An overt act is one that manifests the pursuance of a criminal intent, going beyond mere preparation to the actual commencement of the crime." Bist, 35 So. 3d at 941; see also Groneau v. State, 201 So. 2d 599, 603 (Fla. 4th DCA 1967) (explaining for the overt act element to be established, "[t]here must be some appreciable

2

> fragment of the crime committed and it must be in such progress that it would be consummated unless interrupted by circumstances independent of the will of the attempter."). "Drawing the distinction between a preparatory act and an overt act is often difficult and depends on the facts of each case." Bist, 35 So. 3d at 941.

Carlton v. State, 103 So. 3d 937, 939 (Fla. 5th DCA 2012). In Carlton, the defendant's actions constituted an overt act sufficient to satisfy this test for attempted first-degree murder where the defendant approached the hitman (undercover officer) with the intent to murder the victim, hired the undercover officer, provided photographs, addresses, and personal information, made a down payment, and discussed an alibi. See id. at 941.

The State presented testimony (or relied on testimony presented at a prior hearing) that Alcazar solicited a hitman (undercover officer), provided the hitman with the victim's personal information, including a driver's license, credit card number, and photograph, contacted and met with the hitman, provided $100 for surveillance, identified a location for the crime (the victim's driveway), asked for the murder to be staged as a robbery gone wrong, and provided $400 as a down payment for the crime. Alcazar contends that the act wouldn't be consummated without additional discussion and plans, and points us to Arias v. State, 593 So. 2d 260, 263 (Fla. 3d DCA 1992), in which this court reversed a conviction of attempted first-degree murder and

3

concluded that the defendant's actions constituted mere preparation and lacked "overt acts nearing consummation of the crime."

In Arias, the defendant discussed a murder plot with co-defendants and gave one of them a bottle of Hycomine to give to the infant victim. See id. However, the court explained that "[t]he plot to kill the child went no further," the co-defendant hadn't committed to doing anything, and neither the defendant or co-defendants took any additional steps toward planning or completing the crime. Id. Arias provides no succor for Alcazar.[1] The

---

[1] The dissent notes that "[i]t does not matter whether this panel agrees with the holdings of Robinson or Arias." We agree. While the dissent implies (or maybe explicitly claims) that the panel is overruling Arias *sub silento*, the reality is less dramatic. We disagree on the application of Arias to the facts of this case. The dissent encourages us to apply precedent to the facts of this case in the way it chooses, while ignoring that "[d]rawing the distinction between a preparatory act and an overt act is often difficult **and depends on the facts of each case**." Bist, 35 So. 3d at 941 (emphasis added). We find that the facts of this case differ from the facts of Arias. The acts here rise to the level of overt acts nearing consummation of the crime, therefore mandating denial of the petition.

The dissent's conclusory statement that Arias compels our granting of the petition because the scheme in Arias "comes much closer to the requisite overt act" lacks support in the record (but may be an inadvertent admission by the dissent that Arias should be revisited and clarified). That the scheme here involved greater detail and more overt acts on the way to commission of the crime should be obvious on its face. Here, we have multiple meetings or calls, first with an informant and then with the undercover officer "hitman," an exchange of money (including both payment of money for surveillance and a down payment for the murder), formulation of a plan, provision of personal information, and even a directive that the hitman murder the victim in his own driveway and make it look like a robbery.

4

provision of the drug and request to murder the child in <u>Arias</u> is chilling, but other than the recipient taking possession of the poison before contacting the authorities, <u>Arias</u> lacks the amount and character of overt acts leading to consummation present here. To apply <u>Arias</u> to these facts would all but prevent any charge of attempted murder in a solicitation context, outside of cases where the hitman pulls the trigger but misses the victim.

<u>Arias</u> involved an initial meeting, the handing of the drug to be used to kill the infant, and nothing else in the way of planning or consummating the crime. <u>Arias</u> provides the standard for mere preparation without sufficient, overt acts.[2] The evidence against Alcazar, on the other hand, mirrors almost

---

Similarly, <u>Robinson v. State</u>, 263 So. 2d 595 (Fla. 3d DCA 1972), offers no support for Alcazar. The court in <u>Robinson</u> found the evidence insufficient to establish a necessary overt act for the crime of attempted grand larceny. <u>Id.</u> at 596–97. Robinson and an undercover officer met up for what was supposed to be the purchase by the undercover officer of a stolen television. <u>See</u> <u>id.</u> at 596. While a sale price was discussed in a phone call, and the undercover officer met with Robinson, the crime progressed no further— there was no agreement as to how the sale would be accomplished, and no exchange of money. <u>Id.</u> <u>Robinson</u> presents the quintessential case of mere planning and preparation with minimal overt acts. The dissent spends pages trying to fit this case into <u>Robinson</u> and <u>Arias</u>. <u>Robinson</u> had minimal overt acts while <u>Arias</u> had some. But <u>Arias</u>, importantly, demonstrated no indicia of movement beyond the planning phase. Conversely, Alcazar committed significant overt acts well on the way to consummation of the crime, as explained throughout this opinion, and but for the fact that the hitman was an undercover officer, the act would have likely been consummated with no further preparation or action needed.

[2]     However, while the dissent insists the factual underpinnings of <u>Arias</u> provide as much or greater indicia of overt acts on the way to consummation

5

exactly the facts of <u>Carlton</u>. "Had Carlton not hired an undercover detective, he likely would have effectuated the murder of his ex-wife." <u>Carlton</u>, 103 So. 3d at 941. Similarly, had Alcazar not hired an undercover detective, he would likely have effectuated the murder of his ex-wife's lover. Like <u>Carlton</u>, and unlike <u>Arias</u>, the State presented sufficient evidence from which the trial court could conclude the alleged scheme advanced from preparation to overt acts putting the murder-for-hire scheme in motion.[3] <u>See</u>, <u>e.g.</u>, <u>Robinson</u>, 263 So. 2d at 596–97 ("The overt act must reach far enough towards the accomplishment of the desired result to amount to a commencement of the consummation."); <u>see</u> <u>also</u> <u>Groneau</u>, 201 So. 2d at 603.

---

as present here, a conclusion we reject, to the extent the *en banc* court or Florida Supreme Court agrees with the dissent, the remedy should be *en banc* or Florida Supreme Court review to clarify the threshold for an overt act in this context—and in the process, overrule or clarify <u>Arias</u>.

[3] The dissent explains that "factual impossibility is not a legal defense in Florida . . . [but] the State's effort to seek pretrial detention . . . under these circumstances, brings with it certain practical difficulties." Under the facts of this case and applying the overt act requirement discussed in <u>Arias</u> and <u>Robinson</u>, we see no such difficulty. Florida law doesn't permit the defense of factual impossibility, and here we have sufficient overt acts such that the murder scheme was well on its way to fruition but for factors outside of Alcazar's control. <u>See</u>, <u>e.g.</u>, <u>State v. Rios</u>, 409 So. 2d 241, 243–44 (Fla. 3d DCA 1982) ("We further reject any suggestion that the defense of legal impossibility should bar any criminal attempt prosecution, where, as here, the crime which the defendant attempted was legally impossible to commit due to the fact that the subject property was not stolen. The defense of legal impossibility has never been adopted in Florida in any criminal attempt prosecution and is generally discredited by the overwhelming weight of authority in other jurisdictions.").

6

Petition denied.

GORDO, J., concurs.

EMAS, J., dissenting.

I respectfully dissent because we are bound by our own precedent which, as applied to the instant case, compels this court to grant Alcazar's petition for writ of habeas corpus. While the State has offered sufficient evidence to establish a reasonable probability that Alcazar committed the crime of <u>solicitation</u> to commit first-degree murder, it has failed to offer sufficient evidence to establish a substantial probability that Alcazar committed the crime of <u>attempted</u> first-degree murder. As a result, Alcazar cannot be held in pretrial detention and he is constitutionally entitled to a reasonable bond.

This is the second petition for writ of habeas corpus filed by Alcazar, and some procedural history is therefore necessary to place the case in its proper context. For the limited purposes of this petition, the relevant facts are not in dispute:

In April 2022, Jose Alcazar was initially charged with, inter alia, solicitation of first-degree murder. The State filed a motion for pretrial detention pursuant to section 907.041, Florida Statutes (2022), and Florida Rule of Criminal Procedure 3.132, contending Alcazar should be held without

8

bond pursuant to section 907.041(4)(c)5., which authorizes the trial court to order pretrial detention if it finds that:

> 1) the defendant is presently charged with a "dangerous crime";
>
> 2) there is a substantial probability that the defendant committed such crime;
>
> 3) the factual circumstances of the crime indicate a disregard for the safety of the community; and
>
> 4) there are no conditions of release reasonably sufficient to protect the community from the risk of physical harm to persons.

The term "dangerous crime" is expressly defined by section 907.041(4)(a), which lists twenty-two individual crimes (such as homicide, kidnapping, robbery, sexual battery), designating each as a "dangerous crime."

The statute further provides that "[a]ttempting or conspiring to commit" any of the twenty-two enumerated offenses constitutes a "dangerous crime." Importantly, however, solicitation to commit any of the enumerated offenses is not legislatively designated as a dangerous crime. Nevertheless, following a hearing, the trial court granted the State's motion for pretrial detention concluding that solicitation of first-degree murder, while not included within the list set forth in the statute, qualified as a "dangerous crime," and that the State had satisfied the remaining requirements for pretrial detention.

9

In September 2022, Alcazar filed his first petition for writ of habeas corpus, challenging the trial court's order on the ground that solicitation of first-degree murder is not a "dangerous crime" under section 907.041 and thus could not serve as a basis for pretrial detention. This court, relying on our holding in Hodges v. State, 327 So. 3d 923, 925 (Fla. 3d DCA 2021),[4] concluded that the trial court was without authority to order pretrial detention because "a dangerous crime can only be one that is enumerated in section 907.041(4)(a)." Alcazar v. State, 349 So. 3d 930, 935 (Fla. 3d DCA 2022). This court further noted:

> While the Legislature explicitly included attempt and conspiracy in the "dangerous crimes" definition, it omitted solicitation. Based on the plain language of the statute, we find no basis to expand the list of enumerated "dangerous crimes" to cover a crime specifically excluded from the definition.

Id.

We granted Alcazar's petition and remanded to the trial court for further proceedings on the issue of pretrial release. On remand, the State amended the charging document, adding the charge of attempted first-degree murder—an offense enumerated as a "dangerous crime" under section

---

[4] As this court noted in Alcazar I, our decision in Hodges held "section 907.041, Florida Statutes, contains an **exhaustive list** of those crimes deemed by the legislature sufficiently dangerous to demonstrate the accused poses a risk of harm to the community." Alcazar v. State, 349 So. 3d 930, 935 (Fla. 3d DCA 2022).

10

907.041(4)(a). After a hearing, the trial court granted the motion for pretrial detention upon the conclusion that the State established a substantial probability that Alcazar committed the crime of attempted first-degree murder. Alcazar has now filed a second petition for writ of habeas corpus, this time challenging the sufficiency of the State's evidence to establish the crime of attempted first-degree murder.

I note this is an alleged "murder for hire" case. The allegation is that Alcazar (a corrections officer) told an inmate there was an individual he wanted to have killed. That individual is the husband of Alcazar's girlfriend. The inmate relayed this information to law enforcement, and was instructed by law enforcement to tell Alcazar that he (the inmate) had a nephew who could take care of this. A meeting was scheduled between the "nephew" (in reality, an undercover officer) and Alcazar. There were two meetings, portions of which were recorded by video, audio or both.

Accepting the majority's statement of salient evidence in support of the charge, the State's ostensible support for the offense of attempted first-degree murder was as follows:

> Alcazar solicited a hitman (undercover officer), provided the hitman with the victim's personal information, including a driver's license, credit card number, and photograph, contacted and met with the hitman, provided $100 for surveillance, identified a location for the crime (the victim's driveway), asked for the

11

murder to be staged as a robbery gone wrong, and provided $400 as a down payment for the crime.

Maj. Op. at *3.

This evidence, while certainly enough to establish a substantial probability that Alcazar committed <u>solicitation</u> of first-degree murder,[5] is simply insufficient under our binding precedent to establish a substantial probability that Alcazar committed <u>attempted</u> first-degree murder.

While both solicitation and attempt are inchoate offenses, they require different elements and acts.[6]  As our sister court has noted:

> With respect to the crime of solicitation, the great weight of American authority holds as a general proposition that mere criminal solicitation of another to commit a crime does not itself constitute an attempt. Perkins, Criminal Law, 505, 508 (1957).

---

[5] Section 777.04(2), Florida Statutes (2022) provides:

> A person who solicits another to commit an offense prohibited by law and in the course of such solicitation commands, encourages, hires, or requests another person to engage in specific conduct which would constitute such offense or an attempt to commit such offense commits the offense of criminal solicitation.

[6] Conspicuously absent from this discussion is the inchoate offense of conspiracy, due to the fact that Alcazar was meeting with an undercover officer whom Alcazar believed would be the person committing the killing. As the Florida Supreme Court has held: "[W]here two or more persons conspire with another who is, unknown to them, a government agent acting in the line of duty, to commit an offense under an agreement and an intention that an essential ingredient of the offense is to be performed by, and only by, such government agent, such persons may not legally be convicted of a conspiracy."  <u>King v. State</u>, 104 So. 2d 730, 733 (Fla. 1958).

12

This proposition has been particularly applied to a charge of attempted first degree murder where the facts established only solicitation to commit that offense. . . .

\*\*\*

The gist of criminal solicitation is enticement, whereas an attempt requires an intent to commit a specific crime, an overt act and failure to consummate that crime. This being true, to call solicitation an attempt is to delete the element of overt act.

\*\*\*

Solicitation  may supply an element in the attempt concept, but in and of itself, solicitation does not satisfy all these elements. To merge attempts and solicitation bastardizes the concepts of each and breeds further confusion in an area already wrought with confusion.

Hutchinson v. State, 315 So. 2d 546, 548-49 (Fla. 2d DCA 1975) (citations omitted).

This court's own precedent compels the conclusion that Alcazar's alleged actions did not constitute the crime of  attempted first-degree murder. In Robinson v. State, 263 So. 2d 595, 596-97 (Fla. 3d DCA 1972), defendant was charged with attempted grand larceny.[7]   The acts engaged in by Robinson were summarized in the opinion as follows:

---

[7] In 1972, attempted larceny was a lesser included offense of larceny.  In 1977, the Florida Legislature amended the definition of larceny (theft), creating section 812.014 and providing that a person is guilty of theft if he obtains or uses "or endeavors to obtain or to use" the property of another with the requisite criminal intent.  See Ch. 77-342, § 4, Laws of Florida.  As a result, the crime of theft includes an attempt to commit theft, State v. Sykes,

Charles S. Olesky, received a telephone call from an unknown person asking whether he wanted to purchase a stolen television set for four hundred dollars. Following the telephone call Olesky contacted the police who later kept the rendezvous established between Olesky and the caller. A police officer contacted the defendant at the meeting place and while the two men sat in an automobile the officer told defendant he had the money for the television set when in fact he only had five dollars in an envelope. Defendant stated the television set was nearby but he wanted the money first and when the officer refused, defendant said 'No man, we don't do business that way'. Defendant then attempted to leave the vehicle but the officer placed him under arrest.

Id. at 596.

Defendant was convicted of attempted grand larceny, and on appeal this court reversed, holding the evidence was insufficient to establish the overt act necessary for the crime of attempt:

An attempt to commit a crime involves the idea of an incompleted act as distinguished from the complete act necessary for the crime. The guiding principles necessary for an attempt were given in Gustine v. State, 86 Fla. 24, 97 So. 207 (1923):

There must be an intent to commit a crime coupled with an overt act apparently adopted to effect that intent, carried beyond mere preparation, but falling short of execution of the ultimate design.

The intent to commit a crime standing alone does not amount to an attempt nor is preparation alone sufficient. **The overt act must reach far enough towards the accomplishment of the desired result to amount to a commencement of the consummation. There must be some appreciable fragment of the crime committed and it must be in such progress that**

434 So. 2d 326 (Fla. 1983) and there is no separate crime of attempted theft in Florida. See Harriman v. State, 174 So. 3d 1044 (Fla. 1st DCA 2015).

14

**it would be consummated unless interrupted by circumstances independent of the will of the attempter.**

Id. at 596-97 (emphasis added). See also Groneau v. State, 201 So. 2d 599, 603 (Fla 4th DCA 1967) ("Mere intention to commit a specific crime does not amount to an attempt. Preparation alone is not sufficient. Something more is required than mere menace, preparation or planning. The attempt is complete and punishable, when an act is done with intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption, or for other extrinsic cause. The act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. There must be some appreciable fragment of the crime committed and it must be in such progress that it would be consummated unless interrupted by circumstances independent of the will of the attempter. It is not, however, essential that the actor would have actually succeeded if he had followed the course of conduct upon which he had embarked") (internal citations omitted).

Twenty years later, in Arias v. State, 593 So. 2d 260 (Fla. 3d DCA 1992), we reaffirmed our adherence to the analysis and holding in Robinson. In Arias, the defendant was accused and convicted of attempting to murder an infant who was born with severe birth defects. Jean Arias was the

Director of Nursing for a facility that provided medical care for children. Id. at 261. The infant was the granddaughter of the physician who ran the facility. Shortly after the child was born, she was placed under twenty-four-hour nursing supervision. Several nurses, including Arias, administered medication periodically to ease the infant's pain and suffering. Id. At some point, Arias contacted a nurse, Judy Felsenstein, and told Felsenstein she needed someone to work during Easter weekend. Arias also confided to Felsenstein that she had a plan to kill the infant by administering an overdose of pain medication. Id. Felsenstein recommended that Arias call Etiole Means for this purpose. Means and Felsenstein had both worked with Arias in the past, and Arias had replaced Means at a prior place of employment. Id.

Arias, Felsenstein and Means met at a restaurant and discussed the plan to kill the infant. Arias told Means and Felsenstein that the infant's grandfather was aware of the plan and had approved of it. Id. at 262. Means testified at the trial that, after she applied for the temporary nursing position, Arias gave Means a bottle of medication, Hycomine, and was instructed to administer it to the infant. A very small amount of that medication, if given to the child, would have proven fatal. Id. Means was given the bottle of Hycomine four days before the murder was to take place. After receiving the

16

medication, however, Means became worried and called police to tell them about the murder plot. Before the plot was to be carried out, the police went to Arias' home and arrested her. Id.

Arias was convicted of attempted first-degree murder. She contended on appeal that the evidence was insufficient to establish the crime of attempted first-degree murder. We agreed and reversed, citing to Robinson for the proposition that "[t]he overt act must reach far enough towards the accomplishment of the desired result to amount to a commencement of the consummation. There must be some appreciable fragment of the crime committed . . . ." Id. at 263 (citing Robinson, 263 So. 2d at 596–97). We held that "the acts committed by Arias were only those of preparation to commit the crime and did not rise to the level of overt acts nearing consummation of the crime. Therefore, the evidence was not sufficient to sustain a verdict of attempted first degree murder." Id.

The acts of Alcazar in the instant case, like the acts of the nursing director in Arias, while sufficient to support the charge of solicitation of first-degree murder, are insufficient to support the charge of attempted first-degree murder. In both cases, the State failed to meet the requirement of Robinson that "[t]he overt act must reach far enough towards the accomplishment of the desired result to amount to a commencement of the

17

consummation. There must be some appreciable fragment of the crime committed. . . ." Robinson, 263 So. 2d at 596-97.

In fact, one could make a viable argument that the conduct of Jean Arias—in particular, providing Means with the actual weapon to be used to murder the child four days later—comes closer to the requisite overt act than the conduct engaged in by Alcazar.  By holding that Alcazar's conduct establishes attempted first-degree murder, the majority opinion blurs the distinction between the discrete offenses of solicitation and attempt, inconsistent with our binding precedent.

The majority posits that "[t]o apply Arias to these facts would all but prevent any charge of attempted murder in a solicitation context, outside of cases where the hitman pulls the trigger but misses the victim."  Maj. op. at *5.  The majority's postulation, while perhaps overstated, does make a good point.  After all, it is the State which, in square-peg, round-hole fashion, has decided to charge attempted murder in a murder-for-hire scheme that could never have been consummated, given that the solicited "hitman" was an undercover officer.  And though factual impossibility is not a legal defense in Florida,[8] the State's effort to seek pretrial detention by adding a charge of attempted first-degree murder under these circumstances, brings with it

---

[8] See Gaskin v. State, 869 So. 2d 646 (Fla. 3d DCA 2004).

18

certain practical difficulties. Chief among them is the difficulty in establishing Alcazar engaged in an overt act that **"must reach far enough towards the accomplishment of the [murder] to amount to a commencement of the consummation. There must be some appreciable fragment of the [murder] committed and it must be in such progress that it would be consummated unless interrupted by circumstances independent of the will of the attempter."** <u>Arias</u>, 593 So. 2d at 263 (quoting <u>Robinson</u>, 263 So.2d at 596–97). The State has offered no overt act that meets the requirements of <u>Arias</u> and <u>Robinson</u>. Instead, the State's evidence showed:

> Alcazar solicited a hitman (solicitation), provided the victim's personal information including a driver's license, credit card number, and photograph (mere preparation), contacted and met with the hitman/undercover officer (solicitation and mere preparation), provided $100 for surveillance (mere preparation), identified a location for the crime (mere preparation), asked for the murder to be staged as a robbery gone wrong (solicitation and mere preparation), and provided $400 as a down payment for the crime (solicitation).

It does not matter whether this panel agrees with the holding of <u>Robinson</u> or <u>Arias</u>. Further, it does not matter, were those cases being decided today on a clean slate, whether the outcomes might be different. And finally, it does not matter whether the Fifth District's decision in <u>Carlton v. State</u>, 103 So. 3d 937 (Fla. 5th DCA 2012) arguably supports the majority decision. A panel of this district may not overrule, recede from, or decline to

19

follow its own binding precedent. Our holdings in <u>Robinson</u> and <u>Arias</u> may be overruled only by the Florida Supreme Court or by this court in an en banc proceeding. <u>See</u> <u>In re Rule 9.331, Determination of Causes by a Dist. Court of Appeal En Banc,</u> 416 So. 2d 1127, 1128 (Fla. 1982) (observing that "a three-judge panel of a district court should not overrule or recede from a prior panel's ruling on an identical point of the law." Instead, intra-district conflict should be resolved by an en banc decision of the court pursuant to rule 9.331); <u>Nat'l Med. Imaging, LLC v. Lyon Fin. Servs., Inc.</u>, 347 So. 3d 63, 64 (Fla. 3d DCA 2020) ("Unless the Florida Supreme Court overrules a prior panel's decision, a subsequent panel of this Court is not free to disregard, and must follow, precedent of the prior panel. <u>See</u> <u>Bean v. Univ. of Miami</u>, 252 So. 3d 810, 821 (Fla. 3d DCA 2018). Only the Court, sitting en banc, may recede from a prior panel's decision. <u>See</u> <u>State v. Washington</u>, 114 So. 3d 182, 188-89 (Fla. 3d DCA 2012)").

Our decisions in <u>Robinson</u> and <u>Arias</u> have not been overruled or receded from. Applying that precedent to the instant case, the State failed to make the necessary showing to establish a substantial probability that Alcazar committed attempted first-degree murder. As a result, the State's motion for pretrial detention should have been denied and the trial court should have proceeded to set reasonable conditions of pretrial release.

20

I would grant the petition for writ of habeas corpus, and therefore respectfully dissent from the majority's opinion denying the petition.